HEARD NOVEMBER TERM, 1878.

CASE No. 725.

JOHN D. WARREN v. HENRY H. RAYMOND ET AL.

1. *Richardson* v. *Chappel*, 6 *S. C.* 146, and *Haynesworth* v. *Bischoff*, 6 *S. C.* 159, explained.
2. A mortgage by the heir-at-law of land inherited is not such an alienation within the meaning of 3 and 4 *W. & M.*, 2 *Stat.* 533, as will defeat the claims of the decedent's creditors, so long as the mortgagor retains the possession. See *Simons* v. *Bryce*, 10 *S. C.* 354.
3. But where, upon condition broken, the mortgagee takes possession of the land, under a power given in the mortgage, the mortgage thereupon operates as an alienation.
4. A power of sale, in case of default, contained in such mortgage, but unexercised, would not be an alienation; but a sale under decree of foreclosure would be.
5. A surrender of possession by mortgagor to mortgagee would constitute an alienation, but a mere assignment of the rents of the mortgaged premises would not be so regarded.
6. A decree, from which no appeal was taken, directed a foreclosure and sale at a future day, unless a specified sum was previously paid, with the privilege to plaintiff, in case of deficiency, to enroll his decree and issue execution for balance due; a money decree was instantly enrolled and execution issued for the whole sum specified. *Held*, that the debt was liquidated by the decree, but that the enrollment and execution were erroneous, and created no lien on the defendant's property. Distinction drawn between this case and *Blake* v. *Heyward*, *Bail. Eq.* 201. HASKELL, A. J., dissenting.

Before WALLACE, J., at Charleston, March, 1878.

This was an action commenced in January, 1876, by the plaintiff, a bond creditor of Mary Raymond, deceased, against H. H. Raymond, her son and sole heir, defendant, and to which action several other parties were made defendants, some being creditors of Mary Raymond, and others holding mortgages executed by H. H. Raymond, after his mother's death, upon lands descended. The complaint prayed judgment for plaintiff's debt, a marshaling of Mary Raymond's assets, sale of property, application of the proceeds, first, to Mary Raymond's debts, and remainder to H.

H. Raymond's debts, and the appointment of a receiver. All of the defendants answered.

The plaintiff held three bonds, made and executed to him by Mary Raymond and H. H. Raymond, in 1852, 1854 and 1855, respectively. B. J. Whaley, trustee under marriage settlement of H. H. Raymond and wife, held a joint and several bond of H. H. Raymond and Mary Raymond, dated in 1859, which was in the possession of H. H. Raymond from 1864 to 1875, placed there by the trustee for safe keeping. The executors of Charles Astor Bristed held bond of Mary Raymond and H. H. Raymond for $10,000, secured by mortgage of Mary Raymond, duly recorded, on two lots of land in Charleston. These lots were sold under proper proceedings subsequent to death of Mary Raymond. These two lots of land are not affected by this action, and this claim was not made the subject of exception to the referee's report or to the Circuit decree. The only other claim proven against Mary Raymond is the judgment in favor of W. M. Thomas—all the facts connected with which are fully reported in *Thomas* v. *Raymond*, 4 *S. C.* 347, affirmed by the Supreme Court of the United States, in 1 *Otto* 712. Upon the rendition of Chancellor Carroll's decree in that case, and before the time for sale as therein ordered, Thomas enrolled a money decree in Greenville district for the whole amount found by the decree to be due him, and upon such enrolled decree issued his execution and lodged it in the sheriff's office in Greenville, January 9th, 1868, and in the sheriff's office in Charleston, December 14th, 1868.

In February, 1869, Mary Raymond died intestate, possessed of several valuable improved lots of land in the city of Charleston, and leaving her son, H. H. Raymond, her sole heir-at-law. She left very little personal property, and no administration has been had on her estate. After the death of Mary Raymond, the said H. H. Raymond entered into the possession of all his mother's real estate, and enjoyed the rents and profits of the same.

From June, 1870, to July, 1875, H. H. Raymond executed several mortgages upon this descended real property, to secure debts due by himself, individually, some of them being second

mortgages. At the time these mortgages were given, none of the mortgagees had any knowledge or notice of the existence of the debts due to plaintiff and to Whaley, trustee, and none of them, except Rice and Gayer, had any knowledge of the judgment or claim of W. M. Thomas.

Some of the mortgages contained a power of sale in case of default, and some were foreclosed under order of court before this action was brought. In the mortgage to A. G. Rice there was a covenant that in case of failure to pay principal or interest of the bond secured by this mortgage, or to pay bonds secured by prior outstanding mortgages upon the same property executed by H. H. Raymond, or to pay taxes, that the mortgagee might " peaceably enter into, have, hold, use, occupy, possess and enjoy the said premises above mentioned, and collect all rents, issues and profits of the same, and of every part thereof, and apply the money arising therefrom to the payment," &c. Under this power Rice entered and took possession of the premises in January, 1876.

The tenants of the property mortgaged to W. J. Gayer were required by H. H. Raymond to pay over the rents thereof to Gayer.

Judgments entered up against H. H. Raymond, and unsecured debts due by him, were also presented and proven in this cause. Mary Raymond having died before confirmation of sale of the land mortgaged to W. M. Thomas, the action was renewed against H. H. Raymond as one having in possession the estate of Mary Raymond. He appeared and resisted the confirmation; but the sale was confirmed by order of Judge Orr, and judgment given against H. H. Raymond for balance due, after crediting the net proceeds of sale. A transcript of this judgment was lodged in Charleston, and it is one of the judgments proven in this cause.

The issues of law and fact were referred to G. D. Bryan, Esq., as special referee. After setting out fully the facts, his report concludes as follows :

The following are the issues of law. It is claimed by the plaintiff, John D. Warren, by B. J. Whaley, trustee, and Wm. M. Thomas, that holding claims against Mary Raymond they

are entitled to be paid out of the property owned by her at the time of her death, before the mortgages made by her heir, Henry H. Raymond, can be paid. So far as John D. Warren and B. J. Waley are concerned, they had no lien on the property descended, and if the mortgages by Henry H. Raymond to the several mortgagees above named are such alienations of the property as is required by the statute, then they, the said John D. Warren and B. J. Whaley, trustee, cannot take precedence of the said mortgagees. This question is settled by the recent decisions of the Supreme Court of this state, in one of which (*Richardson* v. *Chappel*, 6 *S. C.* 146,) it is held that under the *Stat.* 3 *and* 4 *W. & M.*, and 5 *Geo. II., ch. VII.*, lands purchased from a devisee are not liable for the debts of the devisor when the purchase was *bona fide* for valuable consideration and without notice ; and in the other (*Haynesworth* v. *Bischoff*, 6 *S. C.* 159,) it is held that a mortgagee of lands is a purchaser within the meaning of the statute which protects a purchaser for valuable consideration without notice. I therefore find as matter of law, that John D. Warren and B. J. Whaley, trustee, are not entitled to be paid as against the mortgagees. The judgment of W. M. Thomas, as against Mary Raymond, stands on a different footing. The real estate of Mary Raymond descended to Henry H. Raymond, bound by the lien of the execution against her lodged in the sheriff's office for Charleston county in December, 1868, and any subsequent alienations by Henry H. Raymond could not divest the lien of this execution. It has been urged by the counsel for the mortgagees, that the decree upon which this execution was issued was improperly and irregularly enrolled.

This may be true as a matter of fact, but it cannot be questioned or set aside in this collateral action, and until set aside by the court in which it was obtained and entered, is binding upon the estate of Mary Raymond, and is entitled to be paid in preference to the mortgages made by Henry H. Raymond, beginning with those last given by him.

The defendant, Wm. M. Thomas, also claims that his judgment of the      November, 1873, should take precedence of the mortgages of A. G. Rice and Wm. J. Gayer, and the claims of Warren and of Whaley, trustee. This judgment is against H.

H. Raymond individually, and the only question is, does such a judgment constitute an alienation which would defeat the claims of creditors of the ancestor ? There is no precedent by which to be governed or guided, but it seems to me that something more is required to divest the heir of the estate by inheritance to defeat the claims of the ancestor's creditors—and though Thomas is entitled to recover under his judgment against Mary Raymond, he must be, under this judgment, postponed to the claims of Warren and Whaley, trustee, who were the creditors of the ancestors, and the same rule should be applied to the other judgments set forth above. As the judgment of *Thomas* v. *Mary Raymond* will absorb the entire proceeds of sale of the premises covered by the mortgage to Wm. J. Gayer, it is unnecessary to consider the question between him, the said Wm. J. Gayer, and the other judgment creditors.

The judgment held by Samuel Lord, Jr., assignee, and the People's Bank of South Carolina, having been released in favor of A. G. Rice, they have nothing upon which to operate, as all of the property, with the exception of that mortgaged to Wm. J. Gayer, was mortgaged before the entry of the said judgments.

Having found that the afore-mentioned mortgagees are purchasers *bona fide* for a valuable consideration, and without notice of any claim except that held by Wm. M. Thomas, of the estate received by Henry H. Raymond from Mary Raymond, the proceeds of the sale of the said estate should be applied as follows, to wit :     *     *     *

The mortgages held by Maria S. Hopkins, Douglas Nisbit and the executors of Bristed having been foreclosed and the property sold thereunder, should not be disturbed, as they stand on the same footing with the other mortgages ; and further, even if the claims of Warren and Whaley, trustee, had been allowed, would not be affected thereby.

I have already stated as matter of fact, that the judgment held by Thomas is claimed by his assignee in bankruptcy, A. Blythe, Esq., and as the question between them is pending in another and proper tribunal, I have not thought it proper to report upon this matter in this proceeding.

The mortgagees of H. H. Raymond excepted to the findings of fact and law upon the judgment claim of W. M. Thomas. The plaintiff and Whaley, trustee, also excepted, upon the ground that there was error in postponing debts due by Mary Raymond to the mortgages executed by her heir after her death.

The decree of the Circuit judge is as follows:

On hearing the report of the referee herein and the argument of counsel, it is ordered—

1. That so much of the report as states matters of fact be confirmed.

2. That so much of the report as finds as matters of law that the claims of John D. Warren and B. J. Whaley, trustee, are postponed to the claims of lien creditors of Mary Raymond and mortgage creditors of H. H. Raymond, is confirmed and ordered to stand as the judgment of the court.

3. That so much of said report as finds that the judgment creditors of H. H. Raymond are postponed to the creditors of the estate of Mary Raymond, so far as funds realized from that part of the estate of Mary Raymond that went into the hands of H. H. Raymond are concerned, is confirmed.

In the year 1863, Mary Raymond purchased from William M. Thomas a house and lot in the town of Greenville, and executed her note, secured by a mortgage of the premises, for the purchase money.

In 1866, Thomas filed his bill in the Court of Equity for Greenville county, for foreclosure of the mortgage and the enforcement of the payment of the note.

Some proceedings were had in the cause before Chancellor Johnson, which are reported in the case of *Thomas* v. *Raymond,* 4 *S. C.* 347.

In the month of January, 1868, the cause came on to be heard before Chancellor Carroll. On the 16th of that month the commissioner of the court reported that there was due upon the note on the 16th January, 1868, the sum of $3371.24, including costs. On the 22d of the same month Chancellor Carroll signed a decree, confirming the report of the commissioner, directing the mortgaged property to be sold on sales-day in March ensuing, and the equity of redemption to be barred and

foreclosed, unless the mortgaged debt was paid before that time, and directing the distribution of the proceeds of the sale, and granting leave to issue execution for the balance of the debt, if the proceeds of the sale should prove insufficient to pay and discharge it.

Did Thomas have the right to enroll this decree and issue execution upon it? The A. A. 1840, (11 *Stat. at Large* 116, 23,) * * "Provided, nevertheless, that any party in whose favor a decree or order for the payment of money, may be made, may cause such order or decree to be enrolled at any time within a year and a day after making the same;" and the proviso goes on to prescribe the way in which this shall be done. Then if this was a money decree, Thomas had the right to enroll it.

Was it a money decree?

In *Blake* v. *Heyward, Bail. Eq.* 201, Judge O'Neall, with the concurrence of Judges Johnson and Harper, says: "The decree in the case before us establishes a sum of money to be due by the defendants in the original bill, and not only subjects the land in dispute to the payment of it, but also directs that the balance, if any, after the sale of the land, shall be paid out of the estate of their testator. It is, therefore, a decree for the payment of money, and has a lien from the time it was pronounced, on all his real estate."

This is exactly what Chancellor Carroll's decree did. It is, therefore, a money decree, and could be properly enrolled under the A. A. 1840.

The decree in *Blake* v. *Heyward*, was pronounced in 1831. The act of 1840 made enrolling necessary to bind third parties by the lien of a money decree.

The Chancellor having pronounced a money decree, had no power to suspend Thomas' right to enroll it, when to enroll it was necessary to give to it the virtue of a lien upon the estate of the defendant, and when his right to enroll was derived from a statute of the state. The purport of the decree amounted to this, that if Thomas chose to delay enrolling his decree until after the sale, then he might require the commissioner to issue execution for a sum different from that adjudged due by the

court and ascertained by deducting the amount realized by the sale from the amount fixed by the decree.

To say that the effect of the decree was to prevent Thomas from enrolling his decree until after the sale, is to say that the Chancellor could suspend a statutory right, and thus by allowing other rights to intervene, defeat Thomas' lien upon the balance of defendant's estate.

Thomas, then, could properly enroll his decree immediately upon its being signed.

Did he enroll it?

There is in evidence a paper purporting to be a copy of the decree of Chancellor Carroll. The paper also contains an abstract of the decree signed by Messrs. Perry & Perry, solicitors for Thomas.

Upon the copy of the abstract are written the words, " Abstract of decree to be enrolled." " Filed 30th January, 1868, J. P. Moore, C. E. G. D." There is also the certificate of the clerk of the court for Greenville county, that the paper is a correct copy of original, on file in his office. It therefore appears that an abstract of the decree was filed in the proper office, and it is to be presumed that all the steps necessary after the filing, to make the paper an enrolled decree, were regularly and properly taken and done until the contrary is made to appear.

" And no order or decree for the payment of money shall, as to third persons, without express notice, have any effect as a lien on the estate, real or personal, of any person or estate intended to be bound thereby, but from the day when the said abstract shall have been delivered or lodged with the said register or commissioner as aforesaid," &c. See A. A. 1840, 11 *Stat. at Large* 116.

The decree having been enrolled became a lien upon all the property of defendant, from the 30th day of January, 1868, in Greenville county. *Blake* v. *Heyward, Bail. Eq.* 213; *Woldrop* v. *Price*, 3 *Desaus.* 203.

Decrees for the payment of money bind land in the same manner as judgments at law. They have a lien from the date of enrollment upon all the real estate of defendant in the county where enrolled.

Now that an enrolled decree constitutes a lien on land, because the party in whose favor it was pronounced has the right to enforce it by execution, is too well settled to be discussed now. If he did not have the right to issue execution upon it, it would not be a lien. Decrees of the nature of the one under discussion are money decrees; when enrolled execution may issue. Therefore, the enrolled decree is a lien. Now, Thomas having a lien upon the property of defendant in Greenville, desired to establish his lien against her property, in Charleston. Under the A. A. 1789, he could have given to his decree a lien all over the state by filing his decree in the clerk's office at Charleston, and issuing and lodging his execution there. He did not do that, but issued and lodged there an execution upon his decree enrolled in Greenville.

Did this execution bind the defendant's real estate in Charleston county?

The A. A. 1849, (11 *Stat.* 582), enacts "That from and after the passage of this act, no judgment nor any execution issued thereon shall, as against any creditor or creditors of the party or parties against whom such judgment shall have been obtained by confession or otherwise, or against any purchaser or purchasers for valuable consideration, have any lien on the property or any part thereof of any such party, except in the district where the judgment is first entered and execution lodged, until an execution issued thereon be lodged in the proper office in the district wherein such party usually resides at the time when such judgment was obtained," &c.

At the time this act was passed executions lodged in the proper office in any district in the state bound personal property in all the districts of the state, and judgments obtained in any district and filed in the proper office in Charleston bound the real estate, of the defendant in any district in the state. This state of the law was productive of manifest inconvenience, and rendered easy the practice of fraud and imposition by the creation of liens in other districts than that in which the defendant resided, that bound his property in the district where he did reside, and of which the parties with whom he would probably mostly deal were ignorant.

B

In my opinion, the act of 1849 was passed to remedy this patent evil, and provided that liens should be extended from any district to the district in which the defendant resided, by lodging execution in the latter district, and only by that means, and that the lien of a judgment, as well as the lien of an execution, could be extended by simply lodging the execution, and the execution, when lodged, bound both real and personal estate. It therefore follows that the execution lodged by Thomas in Charleston, in 1868, was a lien upon the real property of Mary Raymond, in that county.

Whether the execution lodged by Thomas in Charleston, in 1868, was, if not a lien, at least such notice to the subsequent alienees of Mary Raymond and H. H. Raymond, as to defeat the defence of innocent purchasers without notice, need not in this decree be discussed.

Subsequent to the lodgment of execution by Thomas, in 1868, Mary Raymond executed to Charles Astor Bristed a mortgage of certain real estate to secure a bond payable to him, and bearing even date with the mortgage, to wit, January 1st, 1869. To this mortgage the lien of Thomas' execution is postponed. *Bank* v. *Howard & Garmany,* 1 *Strob. Eq.* 174.

Mrs. Mary Raymond died in February, 1869. Her estate was cast upon her only son and heir, H. H. Raymond. All the subsequent encumbrances upon what had been the property of Mary Maymond were created by him. To none of these is Thomas' lien postponed. For, at her death, Thomas' lien covered all her estate, and mortgagees took their lien subject to that. At the moment of her death the rank and status of her debts were fixed by law, and will be paid by this court, according to their priorities, nor can the rules of administration be varied by the acts of the heir, to the extent of allowing a preference to liens created by him to liens upon the property existing when the property came into his hands.

The proceedings in the cause of *Thomas* v. *Raymond* subsequent to the final decree of Chancellor Carroll, all grew out of the peculiar condition of affairs in this state at that time. These proceedings it is not necessary to discuss in this decree, the cause having been disembarrassed of them by the recent decree of the Supreme Court of the United States, in the cause of *Raymond*

v. *Thomas*, further than to say that the confirmation of the report
of sale by Judge Orr, was not necessary to authorize Thomas to
issue execution, and that the order of Judge Orr that Thomas
should have judgment for the balance of the amount of his debt
after the sale gave Thomas no rights or remedies that he did not
already have under the decree of Chancellor Carroll. It is
therefore ordered, adjudged and decreed—

1. That out of the proceeds of the property sold by order of
the court in this cause, and out of the property mortgaged to
Maria S. Hopkins and Douglas Nesbit, the amount due upon
the execution in the case of *W. M. Thomas* v. *Mary Raymond*
be paid, by each piece of property, or the amount that it brought
at the sale ratably and in proportion.

2. That the sum, so to be paid, be paid to the person to whom
it shall finally be adjudged to belong under the proceedings to
that end now pending in the United States Court for the district
of South Carolina.

3. That such person, when ascertained, have leave to levy said
execution upon the property mortgaged, as aforesaid to the said
Maria Hopkins and Douglas Nesbit, guardian, for its proportion-
ate part of said execution.

4. That next after the Thomas execution of 1868, above
referred to, is paid and satisfied, or a sum sufficient to pay and
satisfy the same, is in the hands of George S. Bryan, referee
herein, then the mortgagees of H. H. Raymond are entitled to
receive the balance of the proceeds of the sale of the property
for which they had mortgages respectively, and in those cases
where there are two or more mortgages on the same piece of
property, that the proceeds of the sale thereof be applied to such
mortgages, according to their priorities.

5. That next after the mortgagees of Henry Raymond, that
the creditors of Mrs. Raymond be paid according to the rank
and priorities of their debts.

6. That next after the creditors of Mrs. Mary Raymond, the
creditors of H. H. Raymond be paid according to the rank and
priorities of their debts.

7. That it be referred to W. D. Porter, master, to inquire and
report to this court, according to the scheme of this decree, the
amount of the execution in *Thomas* v. *Raymond*, the ratable

and proportionate amount to be contributed to the payment of the sum out of the sums realized by the different pieces of property upon which it is herein deemed to be a first lien, and that he do report the debts of Mary Raymond and H. H. Raymond, according to their rank and priorities, under this decree.

8. That the costs of this action be first paid.

The plaintiff and Whaley, trustee, appealed to this court upon the ground:

Because his Honor the presiding judge has erred in decreeing that the mortgages executed by the defendant, Henry H. Raymond, during his lifetime, were such alienations of the real property of his ancestor, Mary Raymond, as entitled the holders thereof to priority in payment out of the proceeds of the sales of such property made herein, over the bonds of such ancestor held by these appellants.

The mortgagees appealed—

1. Because his Honor erred in holding that a money decree was properly entered up by Thomas, in Greenville, and that the same created a lien as against the mortgagees.

2. Because, if the same had created a lien, the lien of the same was destroyed when Thomas elected to proceed in the second suit, and under the second suit by Thomas there was created no lien as against this defendant.

3. Because, even if the first judgment was a lien, his Honor erred in holding that the earlier mortgages should contribute with the later towards paying the amount of the said judgment, the rule being fixed since Sir William Herbert's case, 3 *Coke*, 11 *b*, that as the defendant is entitled against the mortgagor to throw the mortgagor on the unmortgaged premises, he must necessarily have the same right as against all parties, whose claims under or against the debtor are subsequent to his own, which said rule has been sustained by an unbroken series of decisions, and to which rule, as reported by the referee in his report, no exception was taken.

*Mr. A. T. Smyth*, for plaintiff.

*Messrs. Campbell & Whaley*, for Whaley, trustee.

*Messrs. W. M. Thomas* and *Buist & Buist*, for Thomas.

*Messrs. Simonton & Barker, W. H. Brawley, I. B. Cohen, A. D. Cohen, De Saussure & Son* and *W. J. Gayer*, for mortgagees.

April 25th, 1879. The opinion of the court was delivered by
WILLARD, C. J. The plaintiff, Warren, a bond creditor of Mary Raymond, deceased, brought this action against H. H. Raymond, her heir-at-law, to whom her lands descended, claiming such lands as assets descended in the hands of the heir of the obligor, liable to the payment of her debt. He has made various parties defendants with the heir, alleging that they make various claims to the land either under the ancestor, Mary Raymond, or under H. H. Raymond, his heir-at-law. His prayer for judgment is that his debt may be paid, that the creditors of Mary Raymond and of H. H. Raymond be enjoined from attempting to enforce their demands against property derived from the ancestor, Mary Raymond, and that the assets of the estate of Mary Raymond be marshaled and the creditors called in to prove their claims, and that all rights and equities be herein adjudicated, and for the appointment of a receiver, and that the property be sold and the proceeds applied, first, to the costs of these proceedings, next to the debts of Mary Raymond, and finally to debts of H. H. Raymond. It appears that administration has not been had on the estate of Mary Raymond, nor is that estate represented for the purpose of marshaling its assets. Neither does it appear that the complaint was in the nature of a creditor's bill against H. H. Raymond for the purpose of converting his estate into assets for the purpose of distribution in equity, inasmuch as it does not appear that judgment had been recovered against H. H. Raymond and execution returned *nulla bona. Ragsdale* v. *Holmes,* 1 *S. C.* 91. Primarily the action would have to be regarded as simply that of one brought by the creditors of an intestate against his heir in possession of lands descended for the satisfaction of his debt, the other defendants being joined as individual parties merely. The Circuit decree takes a larger scope than this would seem to indicate, but so far as it is not appealed from or necessarily affected by matters

brought here by appeal, it will not be disturbed as between the present parties. The fundamental proposition on which the Circuit decree rests is at variance with the recent decision of this court in *Simons* v. *Bryce*, 10 *S. C.* 354. The conclusion of the referee, sustained by the decree, was that the mere fact that the heir had mortgaged the lands descended to him, independently of the fact that the mortgagor remained in possession of the descended lands so mortgaged, was sufficient to establish an alienation in the sense of the statute of 3 *and* 4 *W. & M.*, 2 *Stat.* 533. We held, in *Simons* v. *Bryce*, that while the mortgagor was in possession, the statute of 1791 (*Gen. Stat.* 536) prevented the mortgage from operating as an alienation. In *Richardson* v. *Chappel*, 6 *S. C.* 146, this court· held that *bona fide* alienation by the devisee defeated the claims of the creditor of the testator against the lands devised; but the referee is inaccurate in stating that case as deciding that the alienee must show that the alienation was for a valuable consideration, and without notice, in order to come within the terms of the statute of 3 *and* 4 *W. & M.* In that case the equitable defence of purchaser for a valuable consideration without notice was set up in a suit, in one aspect, in the nature of a bill framed upon the equity of 5 *Geo.* II. One of the facts in the case was that Simpkins, the purchaser from the devisee, had paid part of the purchase money after notice of the plaintiff's claim, and that in equity he should· be made chargeable with the amount thus paid in disregard of the plaintiff's equity. The equitable defence of purchaser for a valuable consideration without notice included all that was necessary to decide the legal as well as the equitable questions involved, and was appropriately considered for that purpose. What was said in that case was not intended as an exposition of the meaning of the phrase *bona fide* alienation, as used in 3 *and* 4 *W. & M.* In *Haynesworth* v. *Bischoff*, 6 *S. C.* 159, the question arose on a plea of purchaser for a valuable consideration without notice interposed to a claim to charge lands of which the title stood in an alienor individually, and not as administrator, as assets of his intestate's estate. The lands were mortgaged to the defendant, who set up the plea of purchaser for a valuable consideration without notice. No question of alienation through a mortgage

was presented in that case. It was held to be immaterial whether any estate passed under the mortgage. In equity the mortgagee was regarded as possessing a right to go upon the land for the payment of the mortgage debt, and this right was subject to protection under the plea of purchaser for a valuable consideration without notice, and that the equitable right was unaffected by the statute that had adopted the views that the court of equity had always held as to the nature of a mortgage. This was far from involving the question of the effect of the legal defence of alienation under the statute of 3 *and* 4 *W. & M.*, nor does it preclude the court of equity from giving the same construction to that defence as a court of law would give, where arising before it, from the provisions of the statute. The Circuit decree is erroneous to the extent that it rests upon the proposition just considered.

In consequence of the conclusion of the referee and the Circuit judge just referred to, it became unnecessary for them to decide whether the mortgages, set up by way of defence to sustain the plea of *bona fide* alienation as against the rights of the creditor of the ancestor, commenced to operate by way of transferring the legal title of the mortgagor to the mortgagees by reason of the mortgagor being out of possession, at any time prior to the commencement of this action. There are, therefore, no such findings of fact and conclusions of law on that point as to bring the case before us for a final decree. Indeed, the brief, although exceedingly voluminous, appears to be framed to present the bearing of the facts of the case upon the points actually decided, rather than to present the whole state of facts to this court so that a final decree could be made variant from that appealed from. We can, therefore, do no more than to lay down the principles that should govern such findings, so far as we are enabled to state them from the facts before us.

As it regards the claim under the mortgage of H. H. Raymond to A. G. Rice, the findings of fact of the referee appear sufficiently full to present the question whether such mortgage in virtue of the proceedings had under it operated as an alienation of the lands descended under the statute of 3 *and* 4 *W. & M.* These findings do not appear to have been excepted to, and must

stand as final. It appears that the mortgage contained a clause that in case of certain contingencies, among others that of default in the payment of principal or interest on the bond which such mortgage was given to secure, the mortgagee, Rice, "shall and may peaceably enter into, have, hold, use, occupy, possess and enjoy the said premises above mentioned, and collect all rents, issues and profits of the same, and every part thereof." Directions were then given as to the application of the money arising therefrom, among other purposes to that of the payment of the principal and interest due on the said bond and mortgage. It appears by the finds of the referee, that under this power the mortgagee, A. G. Rice, entered and took possession of the mortgaged premises on the 14th day of January, 1876, prior to the commencement of this suit, as upon condition broken. It is clear that the mortgagor was out of possession as it regarded such mortgaged premises at the time of the commencement of the present suit. Under such circumstances the decision in the case of *Simons* v. *Bryce* is inapplicable, as it regarded the lands so mortgaged and out of the possession of the mortgagor.

The statute of 1791 (5 *Stat.* 178, *Gen. Stat.* 536,) only operates to prevent the mortgage from having its due effect at common law while the mortgagor is in possession. The moment that possession passes out of him, in the sense of the statute, title passes through the mortgage under the operation of the statute, and the mortgagor occupies the same position he would have occupied had the statute never been passed. Under such circumstances this mortgage would be competent to work an alienation under the statute of 3 *and* 4 *W. & M.* It is claimed here that in order to establish possession out of the mortgagor, it is necessary to show that he has conveyed the mortgaged premises by an absolute deed to a third person, who is in possession under such deed. We have been referred to several cases in this state as supporting such proposition. None of the cases cited, either directly or indirectly, sanction such a conclusion. In *Laffin* v. *Kennedy*, 15 *Rich.* 246, it was held that the mortgagor was not to be considered out of possession so long as the premises were in the possession of a tenant holding under him. This case rests on the familiar principle that the possession of the tenant is the

possession of the landlord in law. Where the mortgage contains authority for the mortgagee to enter upon condition broken and take and hold possession, with the rents and profits, and, after condition broken, is let into such possession by the mortgagor, the latter is clearly out of possession through his own act and deed in the sense of the statute. In that case the mortgage has the force and effect of a mortgage at common law and constitutes an alienation of the mortgaged premises under the statute of 3 *and* 4 *W. & M.* As to such alienated premises, the plaintiff cannot follow the land.

There can be no doubt that when property descended is mortgaged by the heir and such mortgage is foreclosed and the property sold under a decree of foreclosure, it is an alienation. The fact that the mortgage contains a power of sale in case of default is unimportant; it must appear that such power of sale has been effectually exercised in order to produce that result.

It appears that, in order to secure a mortgage given by H. H. Raymond to W. J. Gayer, the mortgagor required the tenants of the property covered by the said mortgage to pay over the rents thereof to the said W. J. Gayer. In order to determine whether that transaction was of such a nature as to amount to a surrender of the possession by the mortgagor to the mortgagee, there should have been a finding of fact whether such was the act and intent of the parties. If the mortgagor merely assigned to the mortgagee the interest to grow due from time to time on an outstanding lease, without parting with the reversion, so that he would retain the right to enforce any covenants on the lease, or to make a new lease on the determination thereof, then the mortgagor must be considered as remaining in possession of the mortgaged premises, and the mortgage does not constitute an alienation by the heir. If, on the other hand, the mortgagor surrendered possession of the mortgaged premises to the mortgagee, then the mortgage must be regarded as an alienation. As the true issues were not presented under the view taken by the referee and the Circuit Court, it appears advisable that this question of fact should be passed upon by the Circuit Court under the view presented herein. The same question is raised as to other defendants,

and is subject to the same observation, and should be disposed of in like manner.

W. M. Thomas, in 1868, obtained a decree for the foreclosure of a mortgage made by Mary Raymond, and enrolled such decree as a money decree, and issued executions thereon, in Charleston, during that year, and during the lifetime of Mary Raymond. The Circuit decree holds that the decree in question was a money decree, and was properly enrolled, and that lodging the execution issued thereunder, in Charleston, gave a lien on the lands of Mary Raymond in Charleston. The decree of foreclosure was made by Chancellor Carroll, Jan. 22d, 1868, and contains the provision "that unless the defendant, Mary Raymond, do pay the complainant, William M. Thomas, the sum of three thousand two hundred and sixty-five dollars and sixty-two cents, with interest on the original sum of twenty-five hundred dollars, from the 16th of January, 1868, and the costs of this suit, on or before the sale-day in March next, the commissioner shall proceed to sell the house and lot on that sale-day, or some other convenient sale-day thereafter, at public auction," &c. It further adds: "It is further ordered, that unless the payment is made as above directed, that the defendant's equity of redemption in the mortgaged premises be forever foreclosed." Direction is then given for the disposition of the proceeds of the sale, after which follow these words: "But in case there should not be enough of the purchase money after satisfying the costs to pay the plaintiff the sum reported to be due him, then he shall be allowed to enroll his decree and issue execution against the defendant for the balance." The Circuit judge holds that the decree was properly enrolled on the 30th of January, 1868, by the filing of an abstract of the decree in the proper office on that day. The question then arises whether the filing of an abstract of that decree on the 30th day of January, 1868, was the enrolling of a money decree, competent to create a lien on real estate.

The Circuit decree holds that the decree of Chancellor Carroll was a money decree within the meaning of the following language, cited from *Blake* v. *Heyward, Bail. Eq.* 201, viz.: "The decree in the case before us establishes a sum of money to be

due by the defendants in the original bill, and not only subjects the land in dispute to the payment of it, but also directs that the balance, if any, after the sale of the land, shall be paid out of the estate of their testator. It is, therefore, a decree for the payment of money and has a lien, from the time it was pronounced, on all his real estate." This case was decided prior to the act of 1840 requiring enrollment, and is, as the Circuit judge claims, good authority on the point. The decree of Chancellor Carroll differs materially from such a decree as that contemplated in the language from *Blake* v. *Heyward*. That case clearly contemplated a decree adjudging a certain sum of money to be personally due from one party to the other, although containing further provisions for enforcing it out of a particular fund, with recourse to a general execution if that fund should be found insufficient. The decree of Chancellor Carroll did not adjudge any amount as presently due. It no doubt implied the existence of a debt, but did not establish it as a present debt, and I know of no authority for issuing an execution to enforce that which is merely implied by a judgment or decree. It gave a certain time after the day on which it was pronounced to the defendant to pay an ascertained sum for the benefit of the complainant, namely, until sale-day in March, 1868, and declared that if such sum was not paid at that time the commissioner should proceed to sell the property. Had a present indebtedness been adjudged these words might have been referred to the delay of the sale merely, but in the absence of such a direct adjudication, and in view of the concluding language of the order, that will presently be considered, the conclusion cannot be resisted that the Chancellor intended for the defendant what was equivalent to a credit on interest until the sale-day in March. The decree also ordered " that unless payment is made as above directed " the defendant's equity of redemption should be barred.

The whole effect of the decree, therefore, if the language and provisions are to speak for themselves, is to impose a duty on the defendant to pay a certain amount at a future day, or, failing to do so, that the mortgaged property should be sold and her equity of redemption barred. Before that day arrived on which the defendant was bound to make such payment, the decree was

attempted to be enrolled and execution issued to the sheriff of Greenville. This was clearly inconsistent with the intention of the decree, which, to place the matter beyond all dispute, concludes with these words: " But in case there should not be enough of the purchase money, after satisfying the costs, to pay the complainant the sum reported to be due him, then he shall be allowed to enroll his decree and issue execution against the defendant for the balance." The whole decree is consistent with itself. It clearly intended to give the defendant until the sale-day in March to pay the money, and for that purpose fixes the proper time for enrolling the decree and issuing execution by the word " then," having relation to the time when the proceeds of the sale should be found insufficient to pay complainant's mortgage debt. To enroll the decree before that time, and seek to enforce immediate payment by execution, was not to enforce, but to disregard, the decree of the court of equity. We are precluded from declaring a decree of a court of general jurisdiction void or erroneous unless duly appealed from, and surely the parties to a decree cannot be permitted to disregard its provisions. No appeal appears to have been taken from Chancellor Carroll's decree, and all parties are bound by it. The Circuit judge was clearly in error in holding that as the right to enroll was a statute right, it could not be affected by the provisions of the decree. The court before whom a cause is pending, especially when of general jurisdiction, is, subject to appeal, the only judge of what are the rights of parties as it regards the use of its process and means of enforcing its judgments. If it judges erroneously as to any such rights, the proper remedy is by appeal; but to assert that parties may disregard the provisions of its decrees, as it regards the mode of enforcement, introduces a dangerous innovation in our ideas as to what is due the authority of the courts.

At all events, the decree of Chancellor Carroll must be regarded as liquidating the debt in favor of W. M. Thomas against Mary Raymond during her lifetime. The proceedings upon Chancellor Carroll's decree, after the death of Mary Raymond, must be regarded as a new proceeding against H. H. Raymond as heir to Mary Raymond, and not as revived against her personal representative, as administration was not then had on her

estate so as to enable it to be revived. These proceedings cannot be regarded as affecting the decree of Chancellor Carroll. They grew out of an attempt to destroy the force and effect of the decree by military authority, and did not involve any question of error in the decree itself, and must be regarded as extensive to the decree.

In view of the foregoing conclusions, it is not practicable at the present time to ascertain the various priorities of the parties plaintiff and defendant, but there should be an inquiry as to the various matters of fact opened hereby, and the decree modified to conform to the principles already laid down. The decree of the Circuit Court should be set aside where inconsistent herewith, and opened in other respects to the extent necessary to modify it in accordance with the foregoing.

I concur.

HENRY McIVER, *A. J.*

I concur, except on the point touching the priority of lien in the case of *Thomas* v. *Mary Raymond,* and as to that I adopt the conclusion reached by the Circuit judge.

A. C. HASKELL, *A. J.*

Decree modified.